A. H. SUDDERTH, Guard., v. R. D. McCOMBS and another, Adm'rs.

*Guardian—Confederate  Money—Negligence—Duress.*

1. The conversion by a guardian into confederate currency of the bank bills and solvent notes of his ward, which came into his hands before the war, requires explanation, without which it will be deemed to import negligence.

2. The pressure of public opinion unaccompanied by peril of life, limb, or great bodily harm, is not such *duress* as will excuse the conversion by a guardian of his ward's estate into depreciated currency or securities.

CIVIL ACTION tried at Spring Term, 1875, of CHEROKEE Superior Court, before, *Cannon, J.*

The Court found the following facts:—Abram Sudderth, the defendants' intestate and the guardian of the minor heirs of Abram Harshaw, received, as such guardian, of the executor of said Harshaw $7705.50 in notes and bonds in June, 1859 ; and a number of slaves and a large amount of real estate and other property belonging to his wards went into his possession.  After the death of said Abram Sudderth in 1868, the plaintiff was appointed guardian and brought this action against his estate for the sum received as aforesaid, and for an account and settlement.  The former guardian kept the funds of his wards with his own, but had the packages marked so that one could be distinguished from the other.  From the year 1862 until the close of the war, prudent business men sought an opportunity to, and did, when they could, pay their debts in confederate money, it being the principal currency in use. The state of the country was such, during that period, that a refusal to accept confederate money in payment of debts would have subjected a creditor to personal danger, and the defendants' intestate received payment of notes due him as guardian aforesaid, under protest.

There was an account stated and returned to a former term of the Court, and among other exceptions to the report of the referee, was the following of the defendants : " No. 1—Defendants except, for that they are not allowed a credit of $3400, the amount invested for plaintiff's wards in Confederate bonds, in April, 1863 ; " which upon the hearing at said term, in 1873, before *Cloud, J.,* was overruled, and from the ruling upon this and other exceptions (not necessary to be stated as they are not involved in the decision now made) both parties appealed to this Court, and the case was remanded to have the facts found.

The statement of facts by His Honor which is substantially set out above was certified to this Court, and the case was argued by *Messrs. Battle & Mordecai,* for the plaintiff, and *Messrs. Merrimon, Fuller & Ashe,* for the defendants.

RODMAN, J. The doctrines affecting the liability of guardians for investing the money of their wards in confederate currency or securities have been stated in so many cases in this Court that it is unnecessary to repeat them here.

At different times from 1859 to early in 1861 the guardian of the infant plaintiffs received from the administrator of their father in bank bills then at par with gold, or nearly so, over $5000. He also received in 1859 $2000 or thereabout in solvent notes, or in those which he accepted as such. This appears in the testimony of Harshaw. His duty as guardian was to loan out this money on bond with good security and to retain the solvent notes or to exchange them for others equally safe. What he did with this money and these notes does not appear. The next fact in the case which the evidence discloses is that on or about April, 1863, he had about those sums in confederate money which he said belonged to his wards and which he converted into

certificates of confederate indebtedness. No blame is imputed to him in respect to this conversion; the one security was equal to the other. What needs explanation is his failure to invest the money which he received, as the law required him to do. His administrator fails to show any excuse or justification for the conversion of the bank bills and solvent notes into confederate currency. Indeed there is no evidence except the declarations of the guardian during his life time, that it was the ward's money which was converted into confederate currency. The connexion between the ward's property received in 1859 and the confederate currency invested in 1863, is not traced.

Supposing however that it was the ward's money which had been converted into confederate currency, the excuse which seems to be offered is that in that part of the State there was a general public opinion hostile to all who refused to receive confederate money in payment of debts, which amounted to duress. But there is no evidence of any special personal duress on the guardian, and certainly there could have been no coercion on him which should have terrified a man of ordinary courage and fortitude into betraying his trust. To constitute duress there must have been danger to life or limb or some great bodily harm. The apprehension of unpopularity is not duress. The duty which a guardian owes to his ward in the preservation of his estate is equally high with that which a lawyer owes to his client or a Judge to the State, fearlessly to administer justice, yet how contemptible and criminal would either be who should fashion his action to suit public opinion.

It is *possible* that if the guardian were living he might show something in exoneration of himself. Some time ago this case was remanded in order to give his administrator an opportunity of doing so if he could, but the case is sent back to us without material change, and we are forced to conclude that no explanation can now be made. We can

not longer delay to give to the plaintiffs what appears to be their right, upon a mere possibility that it may be made to appear that it is not.

The first exception of the defendant covers the question above discussed, and we concur with the Judge in overruling it.

Exception 3 was allowed by agreement of counsel and the others were withdrawn. It is referred to the clerk of this Court to ascertain and report the sum due by defendant after altering the account of the referee as required by the allowance of exception 3. In all other respects the judgment of the Court below is affirmed, and a judgment may be drawn in conformity to this opinion.

No error.                                           Affirmed.